UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAIME WILSER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.1:17-CV-03033-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 12, 22. Attorney D. James Tree represents Jaime Wilser (Plaintiff); Special Assistant United States Attorney Justin L. Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,**[1] Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and

---

[1] Plaintiff's initial motion, does not directly request a remand for an award of benefits. ECF No. 12. However, the Court construes Plaintiff's request for relief to include a remand for immediate award of benefits based on her reply briefing. ECF No. 23 at 6.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

**REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff protectively filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on December 28, 2012, Tr. 206, alleging disability since April 12, 2011, Tr. 175, 178, due to fibromyalgia, diverticulitis, attention deficit disorder (ADD), anxiety, anemia, bipolar, depression, posttraumatic stress disorder (PTSD), insomnia, and hypothyroidism, Tr. 209. The applications were denied initially and upon reconsideration.[2] Tr. 105-07, 114-30. Administrative Law Judge (ALJ) Timothy Mangrum held a hearing on October 29, 2015 and heard testimony from Plaintiff and vocational expert, Kimberly Mullinax. Tr. 31-60. The ALJ issued an unfavorable decision on November 3, 2015. Tr. 12-25. The Appeals Council denied review on December 14, 2016. Tr. 1-4. The ALJ's November 3, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 16, 2017. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs filed by the parties. They are only briefly summarized here.

Plaintiff was 34 years old at the alleged date of onset. Tr. 175. She has completed some college courses, but no degree. Tr. 38-39, 210. Her reported work history includes the jobs of customer service representative at a call center,

---

[2] The initial denial only addresses the DIB claim because Plaintiff's SSI application was misplaced by Social Security and not associated with the record until July of 2013. Tr. 219.

medical receptionist, dental receptionist, and teacher assistant. Tr. 52, 211. Upon application Plaintiff reported that she stopped working on April 12, 2011 due to her conditions. Tr. 210. However, at her hearing, Plaintiff testified that her last job was at Metropolitan Pediatrics, and she was fired in "2009/2008, I think," for missing too much work. Tr. 39. The earnings records show 2009 income from Metropolitan Pediatrics as her last reported income. Tr. 197-98.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process

for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On November 3, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 12, 2011, the alleged date of onset. Tr. 14.

At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia; obesity; bipolar disorder; and anxiety disorder. Tr. 14.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 15.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of work at a sedentary exertional level with the following limitations:

> She could performs tasks that can be learned in 30 days or less; she can make simple work related decisions; she can tolerate few workplace

changes; she can have occasional interaction with the public and coworkers, but she must work in small groups only; she can work around other coworkers but is very limited with tandem tasks; and she will be off task and non-productive for up to 10% of the work period.

Tr. 16. The ALJ did not identify Plaintiff's past relevant work, but concluded that Plaintiff was not able to perform any past relevant work. Tr. 23.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of escort vehicle driver, telephone information clerk, and document preparer. Tr. 24. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 12, 2011, through the date of the ALJ's decision. Tr. 25.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in two ways: (1) failing to properly weigh the medical source opinions; and (2) failing to properly address Plaintiff's symptom statements.

## DISCUSSION

**1. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Phillip Rodenberger, M.D., Bruce Ruttenberg, Ph.D., Thomas Kaster, M.D., Heather Pfeiffer, ARNP, Chris Thoen, PMHNP, and Heather McClure, ARNP. ECF No. 12 at 15-20.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant;

and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Opinions from nurse practitioners are not considered medical opinions because they are not considered "acceptable medical sources." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7); 404.1527(a)(1), 416.927(a)(1). However, the ALJ is required to consider these opinions, 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1),

and the ALJ can only reject these opinions by providing reasons germane to each witness for doing so. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

### A. Philip Rodenberger, M.D.

Dr. Rodenberger evaluated Plaintiff on November 26, 2012. Tr. 497-500. Following a clinical interview and a mental status examination, Dr. Rodenberger diagnosed Plaintiff with PTSD, adult ADD, obsessive-compulsive disorder, and cluster 'C' personality disorder. Tr. 499. At the end of the evaluation report, Dr. Rodenberger stated the following:

> It should be noted that I signed off on a DSHS form for this individual. I do believe that she is impaired to the point where it is unrealistic for her to be working at this time. I am hopeful that we can get close to a complete measure of recovery, such that within six months or so, she will be able to work.

TR. 500.

The parties agree that the ALJ failed to address Dr. Rodenberger's November 26, 2012 statement. ECF Nos. 12 at 15, 22 at 9. However, Defendant asserts that the statement from Dr. Rodenberger failed to constitute probative evidence because the opinion was temporary, lasting only six months, and the opinion was similar to that of Dr. Kaster and Dr. Ruttenberg which were rejected by the ALJ. ECF No. 22 at 9-10.

As Plaintiff's psychiatrist, Dr. Rodenberger's opinion constituted relevant and probative evidence that the ALJ was required to discuss. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ must explain the rejection of all relevant and probative evidence). Considering the opinion was not reflected in the residual functional capacity determination, it was rejected without comment, which is an error. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). As for Defendant's assertion that the opinion was a temporary restriction, the ALJ was still required to

address the opinion and, if necessary, and make a determination as to whether the opined impairments met the durational requirements[3] (i.e. address if Plaintiff actually improved after six months of treatment). Any assertion at this point that the opinion failed to meet the durational requirements is a *post hoc* rationalization, which cannot be considered by this Court. *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

Defendant also asserts that the statement failed to constitute probative evidence because it was similar to the opinions of Dr. Kaster and Dr. Ruttenberg and the ALJ properly rejected these opinions. ECF No. 22 at 10. Again, this is a *post hoc* rationalization by attempting to attribute the ALJ's reasons for rejecting other providers' opinions to the statement made by Dr. Rodenberger. This court can only consider what the ALJ actually relied upon in making his determination. *Orn*, 495 F.3d at 630.

Furthermore, Defendant's assertion that Dr. Rodenberger's statement should be rejected for the same reason as Dr. Ruttenberg's, that it addressed an issue reserved to the ALJ so it failed to qualify as a medical source opinion, is without merit. ECF No. 22 at 10. Defendant is accurate when discussing Dr. Ruttenberg's

---

[3]"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than **twelve months**; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." *Tackett*, 180 F.3d at 1098; 42 U.S.C. § 423(d)(2)(A) (emphasis added). This required twelve months is referred to as the durational requirement.

opinion, ECF No. 22 at 4-9, that whether or not a claimant is disabled is an issue reserved for the ALJ and is, therefore, not a medical opinion and not due any special significance. 20 C.F.R. §§ 404.1527(d); 416.927(d). However, Dr. Rodenberger's statement that "it is unrealistic for [Plaintiff] to be working at this time" is considered a functional opinion and must be addressed by the ALJ. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (a treating physician's statement that the claimant would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. §§ 404.1527(d), 416.927(d).).

Defendant alternatively asserts that if the statement is considered probative evidence, any resulting error would be harmless because Plaintiff failed to show how the error affected the outcome of the case. ECF No. 22 at 11. The Defendant is accurate that the burden to show how an error affects her "substantial rights," is on the party alleging the error, here that is the Plaintiff. *Id. quoting Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). However, the residual functional capacity determination is partially based on the opinions of medical providers, 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and steps four and five rely on the residual functional capacity determination, 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v). Therefore, an ALJ's failure to even address the opinion of an examining or treating physician in his decision is harmful error.

This case is remanded for the ALJ to properly consider and address the opinion of Dr. Rodenberger. Additionally, the record indicates that Dr. Rodenberger completed a form for DSHS indicating that Plaintiff's ability to work was limited. Tr. 500. Therefore, the ALJ will contact DSHS and gather any outstanding evidence related to Dr. Rodenberger's opinion, i.e. request a copy of the form Dr. Rodenberger stated he signed in November of 2012.

### B.     Bruce Ruttenberg, Ph.D.

Plaintiff challenges the ALJ's treatment of the opinion from Dr. Ruttenberg.

ECF No. 12 at 15-17.

On May 30, 2012, Dr. Ruttenberg completed a Documentation Request for Medical or Disability Condition for DSHS. Tr. 276-78. He diagnosed Plaintiff with attention deficit hyperactivity disorder, anxiety disorder, and bipolar II disorder. Tr. 276. He stated that these impairments would limit Plaintiff's ability to work by "liable affect; dysphoric and anxious mood; impaired capacity to concentrate; marginal capacity to attend; marginal impulse control. Very easily overwhelmed." *Id*. He then limited Plaintiff to zero hours of work per week and one to ten hours of activities related to preparing for and looking for work per week. *Id*. He opined Plaintiff's condition would likely limit her ability to work for twelve months. Tr. 277. Dr. Ruttenberg noted that he administered the Personality Assessment Inventory and her results were invalid "seemingly due to a failure to attend." *Id*.

The ALJ gave this opinion "little weight" for three reasons: (1) it did not contain a function-by-function determination about Plaintiff's maximum work capacity; (2) it addressed an issue reserved to the Commissioner; and (3) it was inconsistent with Plaintiff's report that she was working nights in and prior to January of 2013.

The ALJ's first reason for rejecting the opinion, that it did not contain a function-by-function determination regarding Plaintiff's work capacity, is not supported by substantial evidence. An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir.1999). However, Dr. Ruttenberg provided a statement that Plaintiff could perform zero hours of work per week due to her "liable affect; dysphoric and

anxious mood; impaired capacity to concentrate; marginal capacity to attend; marginal impulse control. Very easily overwhelmed." Tr. 276. This is a functional opinion that ties Plaintiff's impairments to limitations resulting in the ultimate preclusion of performing work for any hours. As such, the ALJ's reason fails to be supported by substantial evidence.

The ALJ's second reason for rejecting the opinion, that it addressed an issue reserved to the Commissioner, is not legally sufficient. Echoing the discussion of Dr. Rodenberger's opinion above, whether or not a claimant is disabled in an issue reserved for the ALJ and is, therefore, not a medical opinion and not due any special significance. 20 C.F.R. §§ 404.1527(d); 416.927(d). However, a statement that Plaintiff can perform zero hours of work per week is considered a functional opinion and must be addressed by the ALJ. *See Hill*, 698 F.3d at 1160 (a treating physician's statement that the claimant would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. §§ 404.1527(d), 416.927(d).). As such, this reason fails to meet even the lesser standard of specific and legitimate.

The ALJ's third reason for rejecting the opinion, that it is inconsistent with Plaintiff's reports in January of 2013 that she was working nights, needs further development. When she applied for benefits, Plaintiff reported that she stopped working on April 12, 2011 due to her conditions. Tr. 210. However, at her hearing, Plaintiff testified that her last job was at Metropolitan Pediatrics and she was fired in 2008 or 2009 for missing too much work. Tr. 39. The earnings records show her last reported income from Metropolitan Pediatrics in 2009. Tr. 197-98. Then on January 19, 2013, Plaintiff was admitted to the emergency room after being found in her car unresponsive and reported to the attending medical provider that she had "chronic sleep deprivation due to dchildren [*sic*.] and working nights." Tr. 464. Prior to arriving at the hospital, EMS reported that she was lethargic and had slurred speech. Tr. 466.

The Court acknowledges that Plaintiff inconsistently reported her date last work throughout the record. However, there is no evidence in the record that Plaintiff admitted to working "under the table," or without having her employer withhold the appropriate taxes, and the earnings records show her earnings ended in 2009. Tr. 198. Additionally, the January 2013 statement was made after Plaintiff recovered from a loss of consciousness. Tr. 464. The ALJ relies on this January 2013 reference to working nights both to reject Dr. Ruttenberg's opinion and to discredit Plaintiff's reported symptoms. Tr. 18, 22. Therefore, the ALJ found it very persuasive evidence and it affected the ultimate outcome of the decision. Considering this case is already being remanded for the ALJ to address Dr. Rodenberger's opinion and this evidence is relevant to the claim, the ALJ will further develop Plaintiff's work history upon remand to assist in resolving these inconsistencies. He can accomplish this by taking testimony from Plaintiff regarding any work she performed in 2012 and 2013 and by gathering any earnings records that demonstrate she performed such work.

### C. Thomas Kaster, M.D. and Heather Pfeiffer, ARNP

On April 20, 2012, Dr. Kaster and Nurse Pfeiffer completed a Documentation Request for Medical or Disability Condition form for DSHS. Tr. 279-81. The two providers listed Plaintiff's diagnoses as bipolar disorder, ADD, anxiety disorder with panic, situational depression/grief, fibromyalgia, anemia, chronic migraines, diverticulitis, and hypothyroidism. Tr. 279. They stated Plaintiff was unable to sit/stand consciously for longer than two hours, she had difficulty staying on task and following directions, she experienced mood instability, and her frequent fibromyalgia flares affected her ability to participate in activities of daily living. *Id*. They opined that Plaintiff was limited to working eleven to twenty hours per week and participating in activities related to preparing for and looking for work for one to ten hours per week. They stated that based on their evaluations in October of 2011 and April of 2012, Plaintiff's physical and

mental state was not stable for job acquisition or search. *Id*. They limited her to sedentary work and stated that Plaintiff's condition would likely limit her ability to work for twelve months. Tr. 280.

The ALJ gave their limitation to sedentary work significant weight, but he gave no weight to their opinion of Plaintiff's mental health limitations for three reasons: (1) they were not Plaintiff's mental health providers; (2) they relied on Plaintiff's unreliable self-reports; and (3) they did not provide any explanation for their opinion or point to records that would support it. Tr. 21.

This case is being remanded for the ALJ to address the opinions of Plaintiff's mental health providers concerning her mental residual functional capacity. *See supra*. The opinion of Dr. Kaster and Nurse Pfeiffer are similar to the opinions the ALJ is to readdress. Therefore, the ALJ will also readdress the mental health limitations opined by Dr. Kaster and Nurse Pfeiffer on remand.

### D.     Heather Pfeiffer, ARNP

On January 10, 2012, Nurse Pfeiffer completed a Documentation Request for Medical or Disability Condition form for DSHS on her own. Tr. 285-87. This opinion mirrors the opinion signed by Dr. Kaster and Nurse Pfeiffer in April of 2012. As stated above, the ALJ has been instructed to readdress the mental functional limitations as opined by Dr. Kaster and Nurse Pfeiffer. Likewise, the ALJ will readdress this opinion.

### E.     Chris Thoen, PMHNP

On February 6, 2012, Nurse Thoen completed a Documentation Request for Medical or Disability Condition form for DSHS. Tr. 282-84. He listed Plaintiff's diagnoses as bipolar disorder and generalized anxiety disorder. Tr. 282. He stated that Plaintiff had difficulty with concentration, difficulty with mood stability that can be exacerbated by stress, and that Plaintiff gets overwhelmed easily. *Id*. He limited Plaintiff's working and preparing for and looking for work to one to ten hours per week. *Id*. He stated that Plaintiff's condition would likely limit her

ability to work for six months and then would need to be reassessed. Tr. 283.

Nurse Thoen's opinion was denied for the same reasons Dr. Ruttenberg's opinion was denied. Tr. 22. Since this case is being remanded to readdress Dr. Ruttenberg's opinion and supplement the record regarding Plaintiff's work history in 2012 and 2013, the ALJ will also readdress this opinion on remand.

### F. Heather McClure, ARNP

On January 26, 2015, Nurse McClure completed a Mental Source Statement in which she addressed twenty mental functional abilities, analyzed Plaintiff's "B" and "C" Criteria under the 12.00 listings, and addressed Plaintiff's ability to attend and be on task if employed in a forty-hour work week. Tr. 768-71. The ALJ gave this opinion little weight. Tr. 22.

Since this case is being remanded for the ALJ to properly address the opinions of Plaintiff's other mental health providers, as addressed above, the ALJ will also readdress Nurse McClure's opinion upon remand.

## 2. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that her symptom statements were less than fully credible. ECF No. 12 at 6-15.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to address the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements is necessary.

However, the Court highlights Plaintiff's challenge to the ALJ's rationale that Plaintiff was not as impaired as alleged because she was resistant to mental health treatment and failed take her medication consistently. ECF No. 12 at 10, 12-14. Plaintiff asserts that these reasons failed to meet the specific, clear and convincing standard because these activities, or lack of activities, were the result of her mental impairments themselves. *Id.* Upon remand the ALJ will take testimony

from a psychological expert as to whether or not bipolar disorder can manifest in the way Plaintiff alleges, i.e. an aversion to treatment and medication, and whether or not the record supports the Plaintiff's argument that this is what occurred in her case.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, there is additional evidence that needs to be developed and it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to address the medical source opinions in the record and make a new determination as to Plaintiff's symptom statements. Additionally, the ALJ will also need to supplement the record with any outstanding evidence, in addition to the record development addressed above, and call a psychological, a medical, and a

vocational expert to testify at a remand hearing.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED March 22, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE